### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALAN GROCHOWSKI, SR, individually and on behalf of all others similarly situated, | CIVIL ACTION FILE NO. |
| Plaintiffs, | |
| v. | **COMPLAINT – CLASS ACTION** |
| AMERICAN PROTECTION PLANS LLC D/B/A AMERICAN RESIDENTIAL WARRANTY and WHAT IF DIRECT, LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiff Alan Grochowski, Sr. ("Plaintiff" or "Mr. Grochowski") brings this Class Action Complaint and Demand for Jury Trial against American Protection Plans LLC d/b/a American Residential Warranty and What if Direct, LLC ("Defendants") to stop the Defendants from violating the Florida Telephone Solicitation Act ("FTSA") and Telephone Consumer Protection Act ("TCPA") by making telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call registry ("DNC"). The Plaintiff also alleges that Defendants violated the FTSA by making automated calls to Florida residents.

Plaintiff seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Alan Grochowski, Sr. is an individual located in this District.

2. Defendant American Protection Plans LLC d/b/a American Residential Warranty is a Florida limited liability company that is registered to do business in this District.

3. Defendant What if Direct, LLC is a New Jersey limited liability company.

## JURISDICTION AND VENUE

4. The Court has federal question jurisdiction because this matter arises under the TCPA, a federal statute. The Court also has supplemental jurisdiction because the FTSA claim relates to the same telemarketing campaign as the TCPA.

5. The venue is proper under 28 U.S.C. § 1391(b) because the Defendants reside or made the calls at issue into this District.

## BACKGROUND

The Florida Telephone Solicitations Act

6. The FTSA, Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

7. It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone appears in the then-current quarterly listing published by the department." This includes to a number listed on the National Do Not Call Registry. Fla. Stat. § 501.059(4)

8. It is also a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

9. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

10. Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

The National Do Not Call Registry

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

12. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## FACTUAL ALLEGATIONS

14. Defendant American Residential Warranty is a "person" as the term is defined by 47 U.S.C. § 153(39).

15. Defendant What if Direct is a "person" as the term is defined by 47 U.S.C. § 153(39).

16. What if Direct employs telemarketing calls to generate new customers for American Residential Warranty.

17. Plaintiff Grochowski is the subscriber and the sole user of the cellular phone number ending in 2001.

18. Plaintiff Grochowski registered his phone number on the Do Not Call Registry on July 1, 2003.

19. That is a residential number that the Plaintiff uses for personal calls and is not associated with a business.

20. The Plaintiff has never consented to receive telemarketing calls from the Defendants.

21. Despite that, the Plaintiff received at least two calls from What if Direct calling for American Residential Warranty.

22. Both calls were from the same Caller ID Number, 603-336-2136.

23. Indeed, NoMoRobo, which won the federal government's award for detecting spam calls, identified at least one of the numbers that called as robocallers. *See* https://nomorobo.com/lookup/603-336-2136.

24. The Plaintiff rejected the first call.

25. During the second call, the Defendant was advertised Home Services by What if Direct call for American Residential Warranty.

26. The call was then transferred directly to American Residential Warranty.

27. The Plaintiff spoke to Fred Quinones, an employee of American Residential Warranty.

28. Mr. Quinones quoted a warranty for American Residential Warranty of $699 a year that would cover certain home repairs.

29. Mr. Quinones provided a website of www.arwhome.com, for his company.

30. That's a website for American Residential Warranty.

31. The two calls were sent with an automated system for the selection and dialing of telephone numbers as the Plaintiff answered the calls and there was a pause and audible click prior to anyone appearing on the line.

32. This audible click and pause is indicative of the automated system selecting a number to call and then transferring the call to the telemarketing representative.

33. The calls were not necessitated by an emergency.

34. Plaintiffs and all members of the Class, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. Plaintiffs and the Class Members were also harmed by use of their telephone power and network bandwidth and the intrusion on their telephone that occupied it from receiving legitimate communications.

**AMERICAN RESIDENTIAL WARRANTY'S
LIABILITY FOR WHAT IF DIRECT'S CALLING**

35. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

36. In 2008, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations.

37. The FCC has instructed that sellers such as American Residential Warranty may not avoid liability by outsourcing telemarketing to third parties, such as WHAT IF DIRECT:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "sellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnotes and alteration marks omitted).

38. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *Id.* at 6574 ¶ 1.

39. American Residential Warranty was interested in hiring a lead generator that could make phone calls to potential customers and only transfer the interested ones.

40. To do so, it hired What If Direct.

41. In doing so, American Residential Warranty authorized What If Direct to send telemarketing messages and transfer the call recipient directly to American Residential Warranty.

42. American Residential Warranty controls the day-to-day activities of What If Direct's telemarketing for American Residential Warranty by restricting the geographic footprint into which its telemarketing vendors, including What if Direct.

43. American Residential Warranty also controlled the day-to-day activities by providing the specific criteria for the leads it would accept and required its vendors, including What if Direct, to adhere to those criteria.

44. For example, American Residential Warranty instructed What if Direct to ask potential customers if they were homeowners, or not.

45. To carry out this instruction, American Residential Warranty would only compensate What if Direct for potential transfers that were homeowners.

46. Furthermore, American Residential Warranty instructed What if Direct to ask potential customers if they were interested in warranties or not.

47. To carry out this instruction, American Residential Warranty would only compensate What If Direct for potential transfers that were interested in warranties or not.

48. By virtue of identifying the leads that they would accept, American Residential Warranty directed the content of the communications that What If Direct would use in its calling.

49. American Residential Warranty also provided What If Direct with the requisite equipment and technological information to get transferred to the American Residential Warranty phone system following the autodialed calls.

50. American Residential Warranty knew or reasonably should have known that What If Direct was violating the TCPA by calling numbers on the Do Not Call Registry but American Residential Warranty failed to take effective steps within its power to cause them to stop.

51. American Residential Warranty accepted the Plaintiff's lead and then utilized it for a benefit by continuing to promote its services to him through their telemarketing conduct.

52. The 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

## CLASS ACTION ALLEGATIONS

53. Pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), the Plaintiff brings this action on behalf of the following putative classes (the "Class"):

> **Florida Telephone Solicitation Act Autodial Class:** All persons in the U.S. (1) who received a telephonic sales call regarding Defendant's goods and/or services made from or into Florida (2) using the same equipment or type of equipment utilized to call Plaintiff (3) from July 1, 2021 through the date of trial.
>
> **Telephone Consumer Protection Act Do Not Call Registry Class:** All persons in the U.S. (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days (2) but who received more than one telemarketing call from or on behalf of Defendant (3) within a 12-month period (4) from the four years prior to the filing of the complaint through the date of trial.

54. Defendants and their employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

55. Plaintiff brings all claims in this action individually and on behalf of Class Members against Defendant.

### Numerosity

56. Members of the Class are so numerous that their individual joinder is impracticable.

57. On information and belief, based on the technology used to call Plaintiff, which is used to make calls *en masse*, Members of the Class number in the thousands.

58. The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

59. Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

### Commonality

60. Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.

61. Common legal and factual questions include, but are not limited to, whether Defendant have violated the Telephone Consumer Protection Act or Florida Telephone Solicitation Act, and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

### Typicality

62. The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, received unsolicited telephonic sales calls from the Defendants without giving them his consent to receive such calls.

### Adequacy of Representation

63. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent

counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.

64. The interests of Class Members will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority**

65. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

66. Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendant's liability.

67. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

68. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

69. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.

70. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**Violation of the Florida Telephone Solicitation Act,
Fla. Stat. § 501.059
On Behalf of Plaintiff and the Florida Telephone Solicitation Act Autodial Class**

71. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 70 as if fully set forth herein.

72. Plaintiff brings this claim individually and on behalf of the Florida Telephone Solicitation Act Autodial Class Members against Defendants.

73. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

74. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

75. Defendants failed to secure prior express written consent from Plaintiff and the Class Members.

76. In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

77. Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

78. As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in

damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## COUNT II

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the National Do Not Call Registry Class)**

79. Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 70 as if fully set forth herein.

80. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

81. The Defendants' violations were negligent, willful, or knowing.

82. As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

83. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

A.      Injunctive relief prohibiting Defendants from using an autodialer to advertise their goods or services;

B.      A judgment awarding Plaintiff and all class members statutory damages of $500 for each violation of the TCPA or FTSA and $1,500 for each knowing or willful violation; and

C.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

D.      Such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: March 28, 2024          PLAINTIFF, on behalf of himself
                                and others similarly situated,

                                */s/ Avi R. Kaufman*
                                Avi R. Kaufman (FL Bar no. 84382)
                                kaufman@kaufmanpa.com
                                Rachel E. Kaufman (FL Bar no. 87406)
                                rachel@kaufmanpa.com
                                KAUFMAN P.A.
                                237 South Dixie Highway, 4th Floor
                                Coral Gables, FL 33133
                                Telephone: (305) 469-5881

13